Wichita and Affiliated Tribes v. Stitt, 23-6041. Counsel for Appellant, if you would make your appearance and proceed, please. Thank you, Your Honor. My name is William Norman, Counsel for Wichita and Affiliated Tribes. With me at the table is Jonathan Sutton. This dispute involves the interpretation of a gaming compact provision regarding revenue sharing and penalties. Namely, the tribe tried to conduct certain games without the state expanding non-tribal gaming in exchange for payments to the state. Is the issue here only whether the tribes will continue to make payments or have to make payments to the state? Is that the only issue? Well, there's that issue and then there's the question of a declaratory judgment with regard to whether Part 11E of the compact has been violated as well. The only the only thing that has a monetary impact to it is the is the tribe's payments to the state. That is correct. And tell me again what the declaratory, will the declaratory judgment if successful have an economic impact on the state? Not immediately, but it would give the tribe tools to use in order to address the violation which in 11E is determined to be so important and stated is so important to the tribes and acknowledged as such. That particular provision provides for a ministerial duty for the state to receive to collect 50 percent of adjusted net revenues that are increased based upon a violation. So it would force this, it would essentially even though it's not an injunction, it would force the state to start to collect those extra revenues. The state has contractually obligated to do that. And to pass them on. That is correct. It's not, they would never be state funds, those are pass-through funds. That is correct. It would just be the redirecting of funds from parties that are engaged in machine games that have been unlawfully allowed in violation of the compact, post-compact. Why is that not functionally damages? Why isn't the state immune from that, from your claim for declaratory relief in the form of damages or however you framed it? Well there's, they're not damages with respect to the state because the state would never have those in their treasury. Essentially they're performing a ministerial function on behalf of the tribes as a result of their agreement not to allow for expanded gaming within the state. And the, but the district court took a contrary view and as far as I can tell, you didn't really challenge that in any meaningful way and on appeal in the brief. Well the district court's view, as we understood it, was to say that they view 11E the same way they treated 11A. And their interpretation of 11A, we contend, is out of context. Although they have indicated that the tribe has used the wrong context to interpret 11A. The district court in its order indicated that 11E would be disposed of for the same reason as 11A. There was specific language in the district court order that said that essentially this could be construed as damages and that even if the state waived sovereign immunity for purposes of in this litigation, it did not waive sovereign immunity for purposes of the assessment of damages and it perceived the 11E argument as damages. Am I wrong about that? And if that is what in essence, and I can pull it up if I need to, if in essence that is what the district court argued, I don't see any argument grappling with that in your brief. So there are two things that argued in our brief. One was that it is a declaratory judgment and therefore there is no issue about sovereign immunity because we alleged that we were seeking a declaratory judgment for the duration of the period of violation. Secondly, with respect to waiver, there is no waiver of course for an ex parte young allegation and so there would be no waiver there. And why isn't there a waiver for an ex parte young allegation? If you didn't make the argument before the district court, why isn't that waived? Well, we did make the argument before the district court that there was no waiver of sovereign immunity. That's not the same as making an ex parte young argument. You need to articulate a theory in order to preserve it. Did you articulate that theory? So our allegation is that the governor by signing the three laws, which we indicate are violations of 11E and allow for declaration on 11E, that triggered those violations. We're not contending that it is a legislative immunity issue. We're not contending that those laws are violative of anything and should be struck down. We're just indicating that his signature on those laws prompted and triggered a review of the contract, which is the compact, and the promises made to the tribes therein. And perhaps you answered my question and I missed it, but there are two specific things that I asked you. One, did you argue specifically ex parte young before the district court? And two, have on appeal, have you meaningfully challenged the district court's reasoning that sovereign immunity may be waived for litigation conduct, but it was not waived for an assessment of damages? And this is damages. Well, I would contend, Your Honor, that we did. And of course, we're focused on 11A and, as I mentioned before, the district court's treatment of 11E consistent with 11A. With all due respect, we did what? As it relates to ex parte young, where in the district court did you raise that theory? I can't speak to that specifically right now, Your Honor. All right, then let's try the appellate brief. Where on appeal have you made an argument that grapples with the district court's rationale that there may be a waiver of sovereign immunity by virtue of litigation conduct, but that doesn't waive sovereign immunity for an assessment of damages? Where is that argument grappled with? And that was the theory the district court articulated below. Well, perhaps we understood that indicating that we were not seeking money damages and that this is an ongoing violation, including current and prospective. We did not need to get into the issue of the waiver of money damages. And so are you saying you didn't do it? I can't say for certain that we didn't. I would have to check the record again. All right. So with respect to our argument, we've laid out and indicated that there are three laws that were passed by the state of Oklahoma, each of which violates the promise that the state made in Part 11A of the Compact, the exclusivity provision. Counsel, is the tribe's position that the Compact is unambiguous or ambiguous? We contend that it is unambiguous. We contend that a correct reading of the first sentence and understanding the purpose of it renders the second sentence unambiguous as well. So how are we to receive your reliance on extrinsic evidence? Well, if you were to determine that it is unambiguous, that it is not unambiguous, we would submit that those extraneous materials would be supportive of the need to send the case back to the district court for additional findings associated with that ambiguity. You know, both sides said it was unambiguous, but and occasionally we say, yeah, it seems to be ironic that both would say it's unambiguous and yet come to opposite conclusions. But there's a, I think there's a fairly strong argument here that it might be ambiguous. But and yet nobody challenges that. Could we on our own say, even though that, whether it's ambiguous or not, has not been directly presented by a challenge, we conclude it is and therefore remand? I mean, we believe in fact you could, but we also believe that because we're appealing the grant of summary judgment to the state that inferences are to be viewed in our favor and the determination of whether the law was applied properly is de novo, of course. Would there be additional evidence available? I mean, have you suggested what other evidence you might present as to the meaning of additional expansion of gambling rights to the casinos? Well, in the record there are letters from Governor Brad Henry. There is a letter from the Department of Interior who reviewed the compact at the time. We believe without, you know, if we reach the point where you determine that it is ambiguous, we believe there are a number of witnesses and that we could call and information that we could present that would clarify that. And the reason we say that this is not ambiguous is because if you understand that this is a compact under the Indie Gaming Regulatory Act, it's a specific purpose for its existence that the federal law specifically says that states cannot tax tribes and that there is a two-part determination that has been developed by the Department of Interior with regard to whether or not a payment to the state is a tax or not, whether there has been a meaningful concession by the state and whether there's substantial economic benefit to the tribe. That first sentence of 11a speaks specifically to that. Every party that was negotiating this agreement in the document itself made clear this was going to be submitted to the Department of Interior where they would do an analysis to determine whether or not these payments authorized by 11a would be permissible. And so without reconstructing the first sentence as the district court has done and giving meaning to every word there, you have two parts to that first sentence. The first one is a meaningful concession, the substantial exclusivity that the tribes are supposed to be entitled to receive under this compact. And the second one is a substantial economic benefit which is specifically identified as the opportunity to play covered games. So when you get into the second sentence and it says in consideration thereof, that's a specific reference to both parties speaking to the Department of Interior and saying we believe we have met the two-part determination that you will consider when this is submitted back to you for approval of these of these payments, which is part of a determination of whether to approve or not the compact. And that you contend is unambiguous. That is unambiguous and there's a letter from the Department of Interior in the record approving the tribe's compact which in great length says they've approved over 200 compacts, they review them carefully and they review them carefully applying that specific test to payments. Well, going to Judge Rosman's question though, I mean if we take the premise of both parties, apparently the operating premise that this compact is unambiguous, 11A is unambiguous, all of this other stuff, why is that even appropriate to consider? I mean generally when a court undertakes analysis of an unambiguous passage or determines whether it is unambiguous, it looks at the language itself. I mean the language itself, its context within the broader document, the compact, those sorts of things. It doesn't look at letters from Brad Henry. I mean so why would we do that now? I mean if your contention out the gate is that this contract is unambiguous, why shouldn't we just take it straight up on the language and determine whether it's unambiguous or not? Well to be clear, maybe I misunderstood the question, but I think I was asked whether if this was determined to be ambiguous, what would we submit? Are there things that we could submit at the district court? And so I was answering that question. Okay, well please answer my question. My question now is if the contract is unambiguous, all of this other stuff including the letter from Brad Henry, it is not within the scope of the analysis, is it? It is not if it's unambiguous and we say that it is not ambiguous because if you give reading to every word in 11a and you understand even within the framework of the compact itself where it refers several times to the document being submitted to Department of Interior and if you recognize that the genesis of compacts like this and the goal associated with them is the Indian Gaming Regulatory Act, it's very clear what the purpose is here and the purpose is to protect tribes, to protect their revenue so that they can be applied to their tribal governments, build strong tribal government, to build their communities. The direction that the district court took with this and the direction of the state requests that you take with this flips that on its head. It leaves to the tribes not casino style gaming, a limited subset of gaming. We don't have house bank card games. We don't have Vegas style slot machines. We don't have sports betting. This is not Las Vegas style gaming. It is a subset and the district court would leave us in the position, sorry my time. No, please go ahead. It leaves us in the position where the tribes have a small subset of gaming that they can play and the state's in the position that they can enact any gaming that they prefer and have it not violate the provision of 11a and still have the states paying, still have the tribes paying to the state. And let me understand. I know you took issue with the district court statement that essentially what's at issue here in this language about additional electronic gaming was covered games. That's correct. Okay, well and took issue with that based in part on what the first sentence said. So help me to understand. This language it says the compact provides tribes with substantial exclusivity. Are you saying that that in itself is separate from what comes later where it says consistent with the goals you can have gaming with respect to covered games. Those are two separate things. That is correct, your honor. And if you look at the grammar associated with it, the punctuation associated, we have an and that separates. I'm looking at it, but so your point would be the first part is essentially a broader grant of substantial exclusivity. That is correct and the payments to the state cannot be authorized without the Department of Interior finding that there was a meaningful concession and the exclusivity laid out. It's in the second sentence of 11a which says so long as the state does not, after this compact, expand gaming and it's to two groups, organizational licensees who originally were not permitted to operate table games. And so that first prong speaks to them and table games. The second prong which is any additional electronic or machine gaming speaks to the organizational licensees and anybody else. Let me ask you briefly. HB 1836 which relates to the expansion of hours of course racetracks. I didn't really see an argument there in your brief addressing that. Well our argument goes to the issue that any additional electronic gaming, and I believe we did make this argument, any additional electronic gaming is not the equivalent of new games. And so this again is from the construct of the Indian Gaming Regulatory Act, the federal law. It's not the Indian Games Regulatory Act. It sets up three different standards for games. Class one gaming which has a number of games. And I apologize. Let me try to narrow the focus of the question. The question is the allegation as I understand it is by expanding the hours of course racetracks, they violated this compact. And I what the state did and I did not in the district court rejected such a contention. What I'm saying is I didn't really see your argument on appeal as engaging with that rejection. Am I wrong? Again I cannot speak to a specific page number but I believe we made that point. The confusion may lie in the district court's analysis where they looked only with respect to horse racing to the specific organizational licensee language in the second sentence. But horse racing is also subject to the any additional electronic or machine gaming limitation as well. So additional hours is additional gaming. The district court didn't get there. No they did not. They only stopped at organizational licensee language thinking that that was the only thing speaking to that particular issue. All right. And we disagree with that. Okay. I understand. Thank you counsel. We'll hear from the other side now. Thank you. It was quite liberal with your opposing counsel on time. We don't need to make it up but we will take into consideration the same liberal approach. Please proceed. Make your appearance and proceed counsel. Thank you your honor and may it please the court. My name is Gary Gaskins. I along with my co-counsel Kyle Pepler represent the Oklahoma governor J Kevin Stitt. Before diving into the merits there are threshold issues of article 3 standing and jurisdiction that need to be addressed. First there is no article 3 standing by the tribe to sue the governor consistent with ex parte young. Thus there is no subject matter jurisdiction over this dispute. Specifically there is no casual connection between the governor's responsibilities and any injury that the tribe may suffer. The governor I mean you said well the governor doesn't manage casinos but but to me that was not the issue. The issue is did the government did the governor have administrative responsibilities over this compact? And the answer I assume would be yes. He does not. Who does? The under Oklahoma law specifically Oklahoma title 74 section 1223 the Oklahoma State Bureau of Investigation and not the governor is expressly identified as quote the agency responsible on behalf of the state for monitoring and oversight for compacts related to Indian games. What's that what's the group the the government branch again? That's the Oklahoma State Bureau of Investigation also known as the OSPI. Oklahoma Bureau of Investigation? Yeah similar to the Oklahoma's version of the FBI and in that OSPI there is a gaming compliance unit as part of that. But was that I mean it's odd to give kind of a supervisory responsibility to the FBI or the somebody individually broke some law but it would be odd to think that you would give them administrative oversight. Sure and and the second part is is there's another agency that's discussed in the compact and that's in part 3 section 25. There is a defined term for quote state compliance agency and the state compliance agency is defined as meaning the state agency that has authority to carry out the state's oversight responsibilities under this compact which shall be the Office of State Finance or a successor agency and in 2012 Oklahoma changes its law to make the Office of Management and Enterprise Services also known as OMES as the successor agency to the Oklahoma Office of State Finance. Office of Management and State Services? Office of Management and Enterprise Services. So if we agree with you that the governor himself is not a proper party why isn't the state a proper party? Well because the only way that we can even get there is to go through ex parte young the state has has sovereign immunity and and the only way that they can have this sort of declaratory judgment that they're seeking would be to have a declaratory judgment against the state officer that is in charge of of administering whatever that they are complaining about. What about the litigation behavior of the state's lawyers? I mean your answer read Oklahoma constitutes the real party in interest and the answer was filed by governor's counsel not the AG's office but I thought in Oklahoma any lawyer authorized to represent the state can waive the state's immunity. Sure I think that there's two there's two different uh tax ex parte young has two two elements to it you've got the article three standing issue and then you also have this constitutional defense of of sovereign immunity and I think what we're focused on here is is the article three standing as we're talking right now and article three standing is a prerequisite to subject matter jurisdiction and that can never be waived. And if we're talking about declaratory relief and the question of whether the state is a party if you sue governor stitt in his official capacity and he represents the state and if a declaratory relief if the test is the declaratory relief has the capacity to affect affect the actions of the defendants why wouldn't the declaratory relief here have the capacity to affect the actions of the defendants now mind you I'm not talking about injunctive relief I'm not talking about whether that's on the table I'm talking about declaratory relief only why isn't it enough that any declaratory relief here could have the capacity to affect the the actions of Oklahoma state officials? Well I would point out that this court in the and then the Bishop v. Oklahoma case that's cited in the Hendrickson case even though that's an unpublished decision those cases both involved governors that were sued and and this court held that there was no article three standing to sue the governors in those in those situations. And I thought I thought in those certainly in Bishop I thought we were some sort of action. No no no no what I understand to be at play here is a declaration that what the state has done violates this compact. I got you so under ex parte young though ex parte young the court can only grant prospective relief but I think the district court pointed that out in its order. That's right but ex parte young is as I generally conceive of it relates to having that state official who act to control the violation the ongoing violation of federal law. As I said I'm not talking about adjunctive relief here I'm talking about whether they have the capacity to say that there has been a violation here okay I'm making a declaratory statement that there is you know it's an ongoing violation there's a violation of the compact and that's it and so the point is if you're judging whether that is whether that is a viable claim in other words whether it you know whether it meets case or controversy standards isn't it enough that it has the capacity to cause state officials to conform their conduct to the declaration? I still believe under article three standing you have to name the official that is responsible you can't there's not an actual case or controversy. Why in this instance if the governor is the governor involved in the negotiation of the compact? Under the statute it said that the governor was I think you know currently in Oklahoma I think the legislature has has taken over that responsibility from the governor so he is referenced in the compact as as being someone that was part of the negotiations. Okay all right so you have this compact that the governor has his fingerprints on in some way the question would be if there is a declaration and that declaration runs to the state of Oklahoma okay the point I'm making is why isn't why isn't the governor if he sued in his official capacity the equivalent of the state of Oklahoma? I think that that's the situation in every one of these ex parte young cases every time you sue an official in their official capacity it's the equivalent of and the state has sovereign immunity from suit. Ex parte young you sue the you sue the state official because the state official has the capacity to act on the ongoing violation of federal law right? Correct. Okay well in this instance you are if you were to see why isn't suing why isn't suing governor Stitt in his official capacity you you have a sovereign issue but you're here so the question is I mean I think the the result is that as by virtue of participating in this litigation you've waived any sovereign immunity as it relates to being in this case which is different than I as the district court pointing out different than the question of whether you accept damages liability but what why isn't the fact that you're standing here now the a notion that the state of Oklahoma could be bound by a declaratory judgment telling his officers to do something? So I would disagree on the sovereign immunity the only sovereign immunity that has been waived was this the original claim where the there was a dispute as to whether these compacts were automatically renewed. This is a separate claim that was only brought by the tribe at no point has the state ever waived sovereign immunity. But the government the government the governor in in this case has been arguing for some interpretive advice from the court and has been seeking some affirmative relief. Right but at the from the very beginning the governor has in his motion for summary judgment he has pointed out that he is not the proper party for the for the Wichita and affiliated tribes to suit that has been preserved from the beginning. So how are we supposed to understand the governor's answer that reads Oklahoma is the real party in interest and Oklahoma law 74 Oklahoma statute section 6 that says Oklahoma law empowers the governor to employ counsel to protect the rights or interests of the state so on and so forth in any proceeding in which the state is interested or a party. So your your lawyers the governor's lawyers for the state participated and putting those pieces together it seems that the state has now wait no what am I missing? Well I think what is being missed is that there's nothing that the governor himself can do to to remedy this situation. So there's not a controversy as it relates to the governor. But if the governor is out is the state just out automatically? Isn't the state a proper defendant even if the governor is not a proper defendant? The state enjoys sovereign immunity which it has not waived and the state has raised sovereign immunity in its motion for summary judgment and again I think the the the declaration would only be for some sort of prospective relief which would be what would require under ex parte young. But that is in fact what we're talking about prospective ex parte young relief. So the so the from what I've heard today I guess the the first of all we've got two we've got two parties we've got the or we've got two entities you got the lottery commission which is a state entity right so they want to get a declaration that the lottery by you know spanding lottery in some form or fashion owes the tribe liquidated damages right so the the state of Oklahoma lottery commission would be entitled to sovereign they have not sued the lottery right so what they are wanting a declaration is that the state has an obligation to collect money from the lottery right so they're trying to get the state to affirmatively do something but not a monetary response. But this the lottery is the state of Oklahoma the Oklahoma lottery commission is a instrumentality of the state of Oklahoma so I mean that is that is the instrument governor then the governor though has no administrative responsibility over the lottery at all you said. Correct his only limited responsibility would be to I think he he had a 0.5 of the seven individuals on the on the lottery commission but you know those are still subject to senate confirmation so it's not him that would be the one that would be active. Does he have any power to remove them or to instruct them to do something? I believe he may have the power to remove them but he would then have to get someone that would follow his his guidance that would also be confirmed by the senate so I don't think that he would actually have control of them you would still have to get this by the Oklahoma senate. Help me with this sort of fundamental issue here it seems to me when I when I conceive of ex parte young what I conceive of is a situation where yes you could have a standing problem if you sue an official who did not have authority to essentially rectify a ongoing violation of federal law as it relates to I seek injunctive relief I want you to do something about this and therefore if I sue the wrong person obviously they're you know that person doesn't have the ability to fix it why isn't it the case that the governor when sued in his official capacity is the state of Oklahoma if the declaration I'm not talking about injunctive relief if the declaration says that the state of Oklahoma has been committing an ongoing violation of federal law by virtue of or the compact by virtue of violating this compact by virtue of its practices and extending these additional you know the provisions that are at issue here why isn't that there a basis for standing because and why isn't that a case or controversy because such a declaration has the power to conform the conduct of the defendants and I'm not saying I'm not saying that the governor himself can rectify it I am saying that the state of Oklahoma officers can rectify it based upon a declaration they wouldn't have an injunction requiring them to do x y and z but based upon the declaration they could rectify it I think if if the if we were to accept that premise then I think the Hendrickson case would have to be overruled I think the Bishop v Oklahoma case would have to be overruled there was injunctive relief in Bishop versus Oklahoma they wanted somebody to do something right but I guess the the declaration would only be would have a force and effect by it would it would in function be enjoining the state from enforcing the defense of a marriage act it would be declaring that that's unconstitutional I think that that would be yeah the court's premise would would overrule Hendrickson and Bishop and say that you can just sue any sort of state official regardless of of their connection to the to the the controversy and because you when you sue a state official there it's automatically the same as suing the state that you know there there would be no there would be no limits at that point postulate what would happen if if if we said that we're going to grant a declaratory explanation of this compact and it's going to say that under the facts that have been found there the state of Oklahoma has the obligation to require the casinos to make additional payments that they would then remit to the tribe if that happened what assume that was now a legal declaration what would Oklahoma do with that what would Oklahoma be legally obligated to do sure well I think the only two casinos we're talking about are I guess are casinos that are racetracks that are owned by other yeah tribes within the 50 miles or whatever that right and there are no racetracks within 50 miles of the of the subject casino but let's even assume that the casinos can bet on racetracks now on racing I think I'm not that's not an issue before the court today I think the issue here is the the expansion of the hours at at the casinos at the horse race okay all right so it's not the racetracks but it's the casinos what they would do and those casinos are owned by Indian tribes themselves so I mean I the state wouldn't the state would have another sovereign immunity problem in addition to to what we've already identified we would not be able to go to the to the Chickasaw that own the that own the casino or own the racetrack in Oklahoma City we would have no method to recover anything from them the Cherokees own the the racetrack in Tulsa we wouldn't have any mechanism to to get money damages against them well as I'm I'm sorry we well no I mean that presents a whole new issue I want to hear what Chief Judge Holmes has to ask so I'm going to just let you go ahead but I mean I'm just mulling that one over I don't find that a very reposeful answer what what I understood your this line of questioning of Judge Ebel to get to is 11e what I'm talking about is let's play out the same scenario as it relates to 11a if we were to issue a declaration saying that these additional these things these three things that Oklahoma has done you know sq 792 I think it is or yeah 792 all of these three provisions if if one or one at least one of them okay but maybe all three were are are violative well they constitute additional electronic or machine gaming that would be the declaration they they they constitute additional electronic machine gaming we don't enjoin anybody to do anything we just say that's what it is you and and now and you go forward state of Oklahoma and address that why couldn't we do that because it's clear that Oklahoma officers would then know and there would be a federal declaration that what they did in the you know these three provisions constitute additional electronic gaming presumably this tribe would turn around since that decision was issued and say well you need to act accordingly but we wouldn't have enjoined them we that would be an effect of the declaration and then it might have to be followed up with the tribe bringing a second suit exactly but it would be a it would have a legal effect it would establish a legal precedent or a foundation for a second suit that would look very different had we not made that declaration that that sounds to be as if that's an advisory opinion and and that's what I want to get to okay I mean a case called Jordan versus Sosa I know it because I wrote it it is explicitly talks about the notion that when you what makes a not an advisory opinion is it because it has the ability to impact the conduct of the defendant okay it has the ability and if you take a you know a logical and I maybe I'm wrong that's why I'm asking you for your help if you to do two logical steps here and you say Governor Stitt is Oklahoma second we issue a declaration that that has the capacity to affect the conduct of Oklahoma officers note Governor Stitt is Oklahoma why isn't that not a declaratory I mean an advisory opinion because consistent with what Judge Epel was saying yeah maybe there'll be a second suit but but Oklahoma would have been on notice the defendants that what they're doing and what has been done and therefore what continues to go on is additional electronic gaming I think one of the one of the the problems we have as we sit here today is the tribe didn't make those arguments so I think is the court the prior questioning those arguments were not made yeah but these are jurisdictional arguments which you're you're equipped to bring to us and therefore we have an obligation to deal with and I would point out that there was one claim that the tribe did not appeal and that was related to the governor's continuing violation of the compacts and the district court there did weigh those factors that the court just mentioned and declined to grant a declaratory judgment so that was not even that was not something that was brought to the district court's attention there was no discussion of those factors the tribe which would have the the burden of showing this court that there is subject matter jurisdiction did not bring those issues to the court's attention but now on the mayor I'm happy to answer any questions of the merits I know we've only talked about subject matter jurisdiction and I've way over my time I was looking to my colleagues I don't feel compelled to hear anything on on the merits unless anyone has a question all right thank you case is submitted